Paul S. Johnson - 09356-097
5325 Broder Blvd. P-41120
Dublin, Ca. 94568   U1HQ-007
In Pro Persona



FILED
08 MAY 30 PM 2018
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CV 08   2730

NO. __SBA__ (PR)

In re

Paul S. Johnson

On Habeas Corpus

PETITION FOR WRIT OF
FEDERAL HABEAS CORPUS
AND MEMORADUM OF
POINTS AND AUTHORITIES
IN SUPPORT THEREOF

I

1  Petitioner has been unlawfully detained by
2  the Federal Probation Dept, State of California.
3  False imprisonment, Entrapment, False reports and
4  Falsifying Documents In re. These actions being
5  unlawful, non Authorized by Governing laws of
6  the Constitution of the UNITED STATES of
7  AMERICA, the STATE of CALIFORNIA, by agents, who
8  PRE-EMPT other outside law enforcement, C.D.C/DAPO
9  (UNIT 4) REGION II, who acted outside gov. authority.

II

10
11  I Paul Samuel Johnson Jr., am being held captive
12  at what is said to be SANTA RITA COUNTY jail/CDC
13  Dublin parolee violator housing unit 3-F-6 at 5325
14  Broder Blvd Dublin California 94568. Prison director of
15  the Dept. of Correction is JAMES TILTON. Inspector
16  general is MATTHEW CATE & Governor of California
17  is ARNOLD SCHARZENEGAR. California SEN. MIKE
18  MACHADO, and C.C.P.O.A.
19

## STATEMENT OF FACTS

1) April 18, 2008, between the hours of 9:00 & 10:00 AM Friday, I
2) Paul Samuel Johnson Jr. drove to the Federal Probation Dept. located at
3) 280 S. Second ST. SAN JOSE CA. 95112, to turn in my monthly report.
4) Upon entering the building, I had to pass a security check before entering
5) the lobby of the probation dept. There was three security officers on
6) duty when I went through the metal detector. I don't know their
7) names, but they know me. I then entered the lobby to the probation
8) area. My probation officer was told that, I was there. My probation
9) officer is Miss Sonia Lapizco. She escorted me to her office, we sat
10) down and started talking about me being homeless. After about (15)
11) fifteen minutes, Miss Lapizco ask me if I had been drinking. I
12) told her that I had been drinking the night before. She then started
13) getting on my case, which went on for about (2) two hours. In between
14) 10:00 AM & 11:55 AM, I was tested for drugs and breathalyzed for alcohol
15) consumption. My drug test came back Negative for any drugs, and on
16) the breathalyzer my alcohol reading (1) .088. My second reading (15)
17) fifteen minutes later was, .079. This reading would indicate that
18) my alcohol level was going down every minute of that morning.
19) My probation officer, Miss Lapizco contacted, CDC/DAPO Region II
20) Unit 4, and spoke to my parole officers Supervisor, Mr. Ted Roberson.
21) Mr. Roberson sent agents, Purdy & Nguyen down to the Federal building
22) and arrested me. My question is, if I was being violated, why did Miss
23) Lapizco let CDC/DAPO Region II unit 4 violate me instead of the Fed-
24) eral probation dept? And now that I've been violated unlawfully,
25) and given three months with half time, why would Ms. Lapizco
26) would want to take action now. She handed me over to CDC/DAPO.
27) CDC/DAPO, charged me with a DUI. They didn't have no police report,
28) no one seen me driving from that office nor the probation office.
29) I told Ms. Lapizco that I drove to the federal building. She
30) acted upon my statement, told the CDC/DAPO, and they ran
31) with it. I didn't have a condition for alcohol. Now I do!
32) My Federal probation conditions do not have a condition for
33) alcohol as well. All of my drug testing have been (N) negative. I've
34) completed an outpatient program, name (Pathways). Received a
35) certificate of completion. I did have a steady job, my own
36) car, working cell phone and stayed in compliance with both,
37) probation & state parole. What am I doing so wrong?

2

# STATEMENT OF FACTS

1) I am a Veteran of the Vietnam era; 1974 to 1978, United States
2) Army. I have an Honerable Discharge for defending this
3) great Country of ours, Land of the free, home of the brave.
4) Now I have been falsely imprisoned of a crime I did not
5) commit, and Found guilty within the confines of what can
6) only be discribed as a quagmire of unethical judicial stage,
7) crafted by State actors who violated my constitutional
8) rights of the 5TH & 14 amendment," Due process of law,"
9) being universal and applicable yet, disregarded giving
10) place to the unethical birth, resulting in a miscarrage
11) of justice in this here free land in the Country that I
12) have served and protected. As a senior citizen with an
13) honerable discharge from the U.S. Army, tax payer; how
14) is it that I can be imprisoned for something that is
15) not part of my condition of probation/parole, and charged
16) because of what I said, without a hearing? What have
17) our judicial system succumb to when these unethical individuals
18) circumvent and preempt the Federal & State Parole Authority
19) and the judicial system & perscribed Due Process Clause of
20) the 5TH and the 14TH Amendment of the constitution of the
21) United States of America." The power of the Federal & State
22) Parole authority to fix prison terms is limited to prisoners
23) sentenced under the indeterminate sentencing law." Fith
24) Amendment due process requires that the parolee/probationer
25) be accorded certain guarantees, including the right to a
26) hearing. The parolee must have an informal fact finding
27) hearing in the nature of a preliminary hearing, to determine
28) whether the conditions of parole have, in fact, been violated.
29) Due process is satisfide if refixing of term at maximum is
30) subsequently considered at full revocation hearing. A parolee
31) may be detained on one ground but have his/her parole
32) revoked on another. However the facts underlying the revocation
33) must, however, be determined at preliminary hearing followed by a
34) full revocation hearing. These facts must, constitute good cause
35) for revocation; a mere suspicion of complicity in the com-
36) mission of another offense is not sufficient. A prisoner is
37) not required to accept any condition imposed on probation/parole.

3

## STATEMENT OF FACT

1. Especially if that condition is in violation of or infringes on the
2. respected private realm of Family in which the State can not
3. enter. In determining whether to make order, "Parole Autho-
4. rity," not DAPO parole agent's must consider facts of offense and
5. background of parolee. No decision shall be based upon information
6. that is not available to the prisoner unless the information has
7. been designated confidential under the rules of the department
8. and is necessary to the decision. The parole authority "BPH,
9. may consider and act on a parolee's voluntary statement or confession
10. made without the parolee first being apprised of his/her Miranda
11. rights. However at the trial on the offense constituting the parole
12. violation, evidence seized in violation of the parolee's con-
13. stitutional rights will not be admissable. At all hearings,
14. prisoners located in Calif. shall have the rights enumerated in
15. §§ 2245 through 2255. Prisoners located outside Calif. shall have
16. the rights specified in 2367. The prisoner is responsible for bringing
17. to the attention of the hearing panel any issues pertaining to his/
18. her rights under this article or any failure to comply with these
19. rules. A prisoner shall have the right to present relevant docu-
20. ments to the hearing panel. They may cover any relevant matter,
21. such as mitigating circumstances, disputed facts or release
22. planning. The "parole authority" reviews a prisoner's request for
23. reconsideration of denial of goodtime credit, the setting of the
24. length or conditions of parole, and the suspension or revo-
25. cation of parole. Parole is a period of conditional liberty
26. granted in order to facilitate the prisoners rehabilitation.
27. To hold that the Due Process Clause confers a circumscribed
28. right on the inmate, and then conclude that no explanation
29. need ever be vouched for the right being denied, would there-
30. fore change an admittedly circumscribed right into a pri-
31. vilege conferred in the unreviewable discretion of the parole
32. agent, and or the "parole authority," BPH. I think the U.S. Courts
33. decidings in Wolff, Supra, ment something more than that.
34. A parolee has liberty interest in parole when it mandated
35. by statute on certain conditions, and is entitled to a review of
36. the State parole procedures under the due process clause. The
37. purpose of parole is primarily rehabilitative. A prisoner is allowed to live
38. outside prison subject to certain conditions in order to facilitate
39. his/her reintergration into society. Prisoners given hope of free-
40. dom outside prison have a motive for good conduct. In addition,
41. parole serves to alleviate the cost to society of keeping offenders
42. in prison...
43. Due Process Clause of the 14th Amendment of the U.S.
44. Constitution applies to parole revocation proceedings; Calif. Parole

4

## STATEMENT OF FACTS

1) Advocacy project/program (Permanent Injunction); Parole Authority; B.P.H.
2) Actions include parole revocation decisions, denial of parole suitability
3) for life prisoners, or parole conditions set by BPT: "Parole Authority". CDCR
4) is responsible for some other aspects of parole, including determining
5) location of parole and most basic parole conditions, and such actions
6) should be appealed using 602 inmate appeal process. However, a prisoner
7) or parolee who is challenging an action of the BPH: "Parole Authority"; does
8) not have any general administrative Appeal Process!!! The doctrine of
9) exhaustion of Administrative remedies has not harden into inflexable
10) dogma. Thus, in an exceptional case, such as "mine" the administrative
11) remedy is inadiquate. Pursuit of the Remedy would be Futile, or delay
12) would result in irreparable injury. A court has discretion to hear the
13) case without requiring exhausting administrative remedies. Ultamately,
14) the requirment of exhausting administrative remedies should not
15) apply when injustice might otherwise result. "Parole Authority", can
16) not revoke parole or extend a revocation without cause, it may be revoked
17) for violation of a condition of parole or for a commission of a crime,
18) even if the offense precede the granting of parole. The BPH; "Parole Authority",
19) Administrative board is resposible for setting parole dates establishing parole
20) length and conditions. People who are subject to their jurisdiction, void
21) of any general administrative appeal process are adult felons committed
22) by Superior Courts to the Director James Tilton, now it is, as of May 16,
23) 2008, Matthew Cate, former Inspector General. Under the Calif. Penal Code
24) §§ 1168 and 1170. A parole condition (Felon); is a specific condition regarding
25) behavior required or prohibited during parole. Conduct by a parolee that
26) violates the conditions of parole set forth by the "Parole Authority" is defined
27) for a violation of parole. Now a parole agent is not BPH/BPT; "parole
28) authority". A parole agent's peace officer status extends to enforcement
29) of the condition of parole. And to any violation of law that arises or is
30) discovered in the course of employment. A parole agent shall not pre empt
31) any other law enforcement agency in enforcing the law. Any parole
32) agent employed by CDC is a peace officer pursuant to the provisions
33) of P.C. 830.5. They tend to place parole holds on a parolees parole
34) status once the parolee is in violation. A parole agent can not pre empt
35) the law by executing his/her own revocation extension assessment offer.
36) by using coercion, or installing fear by the threat of revocation to manip-
37) ulate a parolee who does not have an attorney present, and circurvent
38) the governing procedure set forth by the protection of Due Process.
39) Niether is a parole agent or unit supervisor allowed by law to turn or
40) manipulate an unlawful arrest into a parole revocation extension
41) hearing by way of Valdivia V. Schwarzenegger for a (REA) revocation

5

## STATEMENT OF FACTS

1. extension assesment (screening offer), or a revocation hearing provided by
2. Morrisey v. Brewer called Morrisey hearing or revocation hearing. All in a
3. fraudulent dizzying way. All to make any parolee sign an preemptive
4. amendment to a parolee's special condition of parole, that wasn't estab-
5. lished by the "parole authority." Especially when a parolee hold shall be
6. maintained only when it is determined that the parolee's release from
7. custody will prove a serious risk to the safty of others, the safety of
8. the parolee, the security of property or when it is likely the parolee will
9. abscond." How can a parole agent therefore arrest, place on hold and have
10. a revocation extension assesment and hearing prior to the "parole
11. authority establishing any new conditions? To place a hold and arrest
12. is direct proof of violation of Due Process, described further in the parolee's
13. right to be provided with an attorney if you are facing a revocation
14. extension. "Your attorney will help you understand the process and decide
15. whether you should accept the BPH's (REA or screening offer). The
16. maximum time you can have your parole revocation term extension
17. term extended is 180 days (6 months). "Conclusion" Now when you have a parolee
18. who is on both Federal & State parole, the state parole authority retains the
19. power to revoke state parole, retake the parolee, and imprison him/her.
20. This power is subject to Federal Rights, if asserted, under the principle
21. of "Comity between jurisdictions. When Federal Authorities do not
22. object to state retaking parolee, or revoking parole status, a parolee
23. may be in a situation were to complain would be futile. But however,
24. the circumscribed Federal & universal constitutional rights give the
25. parolee Authorities that can and will be used in a grant of habeas corpus
26. to reverse the state's subordinate action and power to revoke. Therefore
27. the universal matrix of power to petition the government for redress of grievance
28. superceeds the Authority of BPH. "Prison Authority" as well. Protected by Uni-
29. versal law, governing the free world Founded by our universal ancestors who
30. enacted the law to every being, decendent, element, microcosm, material,
31. Maverick, cherubin, archangle, mason who is free or not, Aram or masiah,
32. hybrid, shaman, in any and all universes and or world. Be they may ethically
33. have right in all dominion of existance. Therefore subjecting any microcosm to
34. their existing atom originated being, on this terrestrial land subject to law
35. given to mankind on an extra-terrestrial governing court, plane, and or
36. realm; on a order issued by any subordinate official. I am not afraid, I
37. am here, I am now evoking excellence transcending that of a Parole Authority.
38. The Valdivia case has resulted in a Federal court order called "Stipulated Order
39. For Permenent Injunctive Relief" (Permenent Injunction) which was
40. entered by the court on March 9, 2004. The Federal court order is able to be
41. enforced. However, to enforce a flawed system that is in itself in violation of

## CONCLUSION

6

1) Constitutional rights, universal laws, is in itself self defeating. The prison
2) advocacy program (CalPAP) of the state of Calif, is therefore a masquerading
3) branch of "parole authority". There is now a ethics violation to any and all
4) legal representation violating and blatantly assisting in the stage craft of
5) the exploited rights of the prisoners and parolees of and in the state of Calif.
6) abroad. They along with the state "Parole Authority", director of corrections,
7) Governor, chief inmate appeal officer, Deputy Commissioner, A.C.D.C. Rhonda,
8) Skipper Dotta, all are in statutory violation as "state actors" of Federal
9) constitutional laws, that effect the conditions of confinement. The federal
10) court is able to enforce the requirements. However (CalPAP) Prison Authority,
11) is in itself biased to monitor & govern itself as a microcosmic law prescribing
12) entity, void of a universal burden of proof, and a constitutional law
13) abiding system of a general Administrative Appeal process. The Permenent
14) Injunction does not affect parolee's ability to sue the "parole authority" (Cal
15) PAP) for money damages regarding parole revocation, or to file a petition
16) for a writ of habeas corpus. However, in any case where you ask the court
17) to make the "Parole Authority" change their practices for everybody, the
18) parole authority officials argue that the lawsuit should be dismissed
19) because of the Valdivia Settlement. In that case, Valdivia Settlement is
20) a civil scheme that violates constitutional law. Violating equal protection
21) differing significantly from other commitment schemes that retro activate
22) former versions of statutes and universal laws. Therefore violating expost
23) Facto. The A.C.D.C., B.P.H. quality control unit, B.P.H. Board of Parole Hearings
24) decisions processing unit, B.P.H. ADA compliance unit, Calif. parole advocacy
25) program, the state of Calif. parole advocacy project, are in fact the
26) "Parole Authority" inc. entity governed by its own perspective of authority.
27) According to (CalPAP) warns the prisoners, a parolees that they "Prisoners"
28) should be aware that laws change often and are subject to defferent
29) interpretations. That (CalPAP) Prison Authority" do not always have
30) the resources to make changes. That it is the sole responsibility of
31) the prisoner/parolee to make sure that information contained in
32) their Injunction is applicable to the prisoner/parolees situation.
33) That if you, a parolee are in the community, most of the materials
34) one needs will be available in public libraries. Prisoners/Parolees in
35) custody, on hold, etc. should be able to find help and materials
36) in the prison law libraries. With this said, a parole violater do not
37) have the access to the law library in order to obtain materials for
38) Pro-Per or legal assistance in law while disputing revocation.

Fitzgerald, John

From:
Sent:
To:
Subject:

*Your own opinion*

Hi John,

yeah, Paul came in here pretty intoxicated and admitted driving. he was in my office for about an hour before i breathalyzed him, at which point he blew a .088, so you can imagine he must have been pretty toasted when he first walked in. I smelled a strong odor of alcohol, that's why i breathalyzed him and he said he'd had a couple of beers the night before.
as we continued to talk, he admitted he has an alcohol problem, but he is very resistant to treatment. i will keep you updated on what i decide to recommend to the court when i initiate violation proceedings. i am requesting a no bail warrant so he is transferred to us after you drop your hold. let me know what you guys will be doing. Thank you soooo much for your help, and thank Ted Roberson, Purdy and Nguyen for me.

*Ms. Sonia Lapizco's E-mail addressed to Mr. John Fitzgerald*

*Exibit*

STATE OF CALIFORNIA
CHARGE REPORT
CDC 1502-B (08/05)

*Exibit*

DEPARTMENT OF CORRECTIONS AND REHABILITATION
DISTRIBUTION
ORIGINAL – C-FILE
1ST COPY – FIELD FILE
2ND COPY – PAROLEE

**REPORT TO:** ☐ BOARD OF PAROLE HEARINGS

| CDC NUMBER | NAME: (LAST, FIRST, MI) | NAME BOOKED AS | REGION/UNIT |
|---|---|---|---|
| P41120 | Johnson, Paul | same | II/SJ 4 |

| ARREST DATE | ARRESTING AGENCY | BPH REFERRALS | BOOKING NUMBER AND/OR LOCATION |
|---|---|---|---|
| 4/18/08 | DAPO | ☐ MANDATORY   ☒ NON-MANDATORY | 08026842/SCL |

| ARREST CODE | *ARREST CODES |
|---|---|
| A | A  DAPO STAFF ALONE  AB  DAPO ASSISTED BY LAW ENFORCEMENT AGENCY  B  LAW ENFORCEMENT AGENCY ALONE  D  LAW ENFORCEMENT AGENCY WITH INFORMATION FROM DAPO |

| HOLD DATE | DISCOVERY DATE | HOLD REMOVED DATE | AGENT OF RECORD | CONTROLLING DISCHARGE DATE | DISCHARGE REVIEW DATE | IMMINENT DISCHARGE |
|---|---|---|---|---|---|---|
| 4/18/08 | 4/18/08 | N/A | J. Fitzgerald | 5/31/10pts | 5/31/08pts | ☐ |

**CHARGES AND CODES**
1. C4. Driving Under the Influence of Alcohol (850)
2.
3.
4.
5.
6.

**REASON FOR RETAINING PAROLE HOLD: PAROLEE DANGER TO**
☐ ABSCOND  ☒ SELF  ☐ PROPERTY – OTHERS  ☒ SAFETY – OTHERS

| DATE COPY GIVEN | NAME OF PERSON NOTICING PAROLEE |
|---|---|

On 4/18/08 Johnson reported to U.S. Probation Officer Sonia Lapizco. Officer Lapizco observed a strong odor of alcohol omitting from Johnson's breath. Johnson was given a breathalyzer and it was determined that he had a blood alcohol level of .08. Johnson stated to his probation officer and to the AOR that he drove his own vehicle to the probation office. The DAPO Officer of the Day was contacted by the probation officer and parole took Johnson into custody for driving under the influence of alcohol.

Federal Probation Officer Preempt State perole Officer to take Johnson into custoy, on the 18TH of April. Charges were implemented on the 21, April, 08.

APR 29 2008

**PAROLE AGENT'S RECOMMENDATION:** Retain hold, refer to BPH.

| PAROLE AGENT'S SIGNATURE | DATE |
|---|---|
| J. Fitzgerald | 4/21/08 |

**UNIT SUPERVISOR'S ACTION**
☒ DECISION  ☐ REVIEW  ☒ RETAIN HOLD  ☐ RELEASE HOLD AS OF (DATE):  ☐ CANCEL WARRANTS – WANTS
☐ CONTINUE ON PAROLE  ☐ CONTINUE IN OUT-PATIENT STATUS  ☐ *DISCHARGE EFFECTIVE DATE:  ☐ RETAIN ON PAROLE
☐ REINSTATE ON PAROLE AS OF (DATE):  ☐ TIME LOSS / NO TIME LOSS  ☐ SUSPENDED/REINSTATE IN OPS AS OF (DATE):  ☐ REFER TO BPH  ☐ INVESTIGATE, SUBMIT APPROPRIATE REPORT BY (DATE):
SPECIAL CONDITION(S)
☐                                                                                                                                                ☐ ADD  ☐ DELETE

**UNIT SUPERVISOR'S COMMENTS/RECOMMENDATION**
☒ I HAVE LOOKED AT THE INFORMATION. I BELIEVE THERE IS PROBABLE CAUSE TO MAINTAIN THE PAROLE HOLD

| UNIT SUPERVISOR'S SIGNATURE | DATE |
|---|---|
| T.E. Roberson, US | 4/21/08 |

**PAROLE ADMINISTRATOR'S COMMENTS/DECISION**

☐ REFER TO BPH   ☐ *DISCHARGE EFFECTIVE DATE

| FIELD ADMINISTRATOR'S SIGNATURE | DATE |
|---|---|

CHARGE SHEET/REVOCATION TRACKING/SCHEDULING REQUEST
CDC 1676 (4/91)

**REPORT TO:** ☐ BOARD OF PRISON TERMS    *Exibit*
☐ NARCOTIC ADDICT EVALUATION AUTHORITY

DISTRIBUTION:    DEPARTMENT OF CORRECTIONS
ORIGINAL - BOARD REPORT
1ST COPY - R.H.C.
2ND COPY - H.A.
3RD COPY - PAROLEE
4TH COPY - U.S.

| CDC NUMBER | NAME (LAST, FIRST, MI) | NAME BOOKED AS | REGION/UNIT | CSTCU - ST |
|---|---|---|---|---|
| P41120 | Johnson, Paul | same | II/SJ 4 | YES ☐ NO ☐ |

| ARREST DATE | ARRESTING AGENCY | BPT REFERRALS: | BOOKING NUMBER AND/OR LOCATION |
|---|---|---|---|
| 4/18/08 | DAPO | ☐ MANDATORY  ☒ NON-MANDATORY | 08026842/SCCJ |

ARREST CODE: A
* ARREST CODES:
A   P&CSD STAFF ALONE
AB  P&CSD ASSISTED BY LAW ENFORCEMENT AGENCY
B   LAW ENFORCEMENT AGENCY ALONE
D   LAW ENFORCEMENT AGENCY WITH INFORMATION FROM P&CSD

| HOLD DATE | DISCOVERY DATE | HOLD REMOVED DATE | AGENT OF RECORD | CONTROLLING DATE | DISCHARGE REVIEW DATE | IMMINENT DISCHARGE |
|---|---|---|---|---|---|---|
| 4/18/08 | 4/18/08 | N/A | J.Fitzgerald | (5/13/08pts) | 5/13/10pts | |

CHARGES AND CODES
1. C4. Driving Under the Influence of Alcohol (850)
2.
3.

CHARGES AND CODES
4.
5.
6.

**PRIORITY**

REASON FOR RETAINING PAROLE HOLD: PAROLEE DANGER TO:
☐ ABSCOND  ☒ SELF  ☐ PROPERTY-OTHERS  ☒ SAFETY-OTHERS

DATE COPY SENT TO PAROLEE    INITIALS OF PERSON SENDING

High Risk Sex Offender
GPS Enrollment Date: 4/17/08      *Officers acted upon my confession of Driving to the probation office*

Charge 1: On 4/18/08 at approximately 0800, Johnson arrived at his Probation Officer's office smelling of alcohol. Johnson stated to Officer Lapizco that he had drove himself to her office on 4/18/08 and that he had been drinking beer that <u>previous evening</u>. Probation Officer Lapizco spoke with Johnson in her office for approximately one hour. Due to the strong odor of alcohol, Officer Lapizco decided that she would give Johnson a <u>Breathalyzer Test</u>. The <u>Breathalyzer Test returned results of .088, which is over the legal driving limit in California. Officer Lapizco immediately took Johnson's car keys</u>. Officer Lapizco contacted State Parole and informed them that Johnson had driven to her office with at least a .088 alcohol level. Parole Agents arrived at the Probation Office and <u>also</u> detected a strong odor of alcohol omitting from Johnson's person. Johnson was taken into custody for driving under the influence of alcohol.

*[margin notes: I gave her my car keys voluntarily / Where are the results on paper]*

Attachments: E-mail sent by Sonia Lapizco, U.S. Probation Officer.

Parolee Statement: On 4/18/08 Johnson stated to the AOR that he drove himself to the probation office and that he was asked to hand over his automobile keys due to him failing a Breathalyzer Test. He continued to state that he had his last drink of gin at around 1100 that previous evening. Johnson stated to the AOR that even though he had a .088 alcohol level, he was able to drive. Johnson also stated to Officer Lapizco that he believed he had an alcohol problem but did not want treatment.

*[margin: Cannot use in a court of law]*

Witnesses: J.Fitzgerald, PA1  — *was on vacation (cannot be witness)*
          S.Lapizco, U.S. Probation Officer  *Talked with me on phone!*

Court Information: None.    APR 29 2008

PAROLEE'S NAME: Johnson, Paul        CDC NUMBER: P41120
Page 1 of 3

## PRAYER FOR RELIEF

(1) I would like you to please issue a Federal writ of Habeus Corpus, and to declare the constitutional rights of the petitioner. (2) Reverse the unethical good cause findings of the unlawful, unconstitutional charges reviewed and ajudicated by the "Parole Authority" void of a revocation hearing, Protected by Due Process clauses of the U.S. Constitution. (3) Restore my legal status of parole. (4) Expunge all "Fraudulent charges from petitioner's central file. (5) Discharge my Federal Probation/State Parole Status. (6) A complete and thorough investigation by outside Party into the unethical, unlawful misconduct and misapplication of the law, as well as the failure of Calif. prisoners advocacy project & program to provide legal representation adequate and sufficient to satisfy constitutional Due Process standards. (7) To mandate that the Director of Correction, Bureau of Prisons Chief Inmate Appeals Coordinators respond to my various filed P.C. 832.5 Citizens complaints. Finally, petitioners prays that the court mandate my immediate release.

## VERIFICATION

I, Paul Samuel Johnson Jr, state:

I am the petitioner in this action. I have read the foregoing petition for Federal writ of Habeas corpus and the facts stated therein are true of my own knowledge, except as to matters that are therein stated on my own information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Dublin, California, on May 25, 2008.

Paul S Johnson Jr.
09356-097
CDC-P-41120
PFN-UHQ-007

PAROLE                                                           (1)

§ 104.01 Definition And Purpose;
Parole is a period of conditional liberty granted in order to facilitate the prisoner's rehabilitation.

(1) Definition: A parolee has a liberty interest in parole when it is Mandated by statute on certain conditions, and is entitled to a review of the state's parole procedures under the Due process clause.

(2) Purpose: The purpose of parole is primarily rehabilitative. A prisoner is allowed to live outside prison subject to certain conditions in order to facilitate his/her reintergration into society. Prisoners given hope of limited freedom outside prison have a motive for good conduct. In addition, parole serves to alliviate the cost to society of keeping offenders in prison.

§ 104.5 Authority to impose conditions:(A).
         Meeting to Set conditions:(B).

(A) Parole normally involves the requirements that the parolee abide by certain rules as a condition of his/her release from prison. The Cal. Board of Parole Hearings has discretion to impose such conditions on any prisoner in granting him/her parole. It must also review prisoners request for reconsideration of parole conditions.

(B) At least 30 days before his/her good time release date, the date on which a prisoner who has accumulated the maximum number of good time and worktime credits would be released, and the Dept. of Corr. and Rehab must meet with the prisoner and inform him/her, using

continued (2)

guidlines set by the parole authority, "of the conditions of parole;". If you refuse to sign your parole condition of parole, or refuse to sign forms related to P.C. Section 290 registration requirements. This is called Revocation Extention. In order to extend your revocation term, the BHP has to provide you with notice of the charges against you, and the opprotunity for a hearing on those charges. You are provided an attorney if you are facing revocation extention. Your attorney will help you understand the process, and decide whether you should accept the Board of parole Hearing; Revocation Extention Assessment (Rea, or screening offer) The maximum time you can have your parole extended is 180 days (6 months).

§ 104.4; Procedure; [1] Minimum time to be served before parole;
  A person sentenced under P.C. section 1168 (indeterminate sentencing law) or under P.C. 1170 (determinate sentencing law) must be placed on parole, unless the parole authority waives this right and discharges the prisoner. (For full discussion of sentencing procedures, see chapter 9) "Sentencing"
  The rules regarding the effect of sentencing on a prisoner's parole release date are;
(1) A person sentenced to inprisonment for a year and a day, sentenced under P.C. Section 1170 (determinate sentencing law) for a crime committed on or after July 1, 1977, or sentenced under P.C. Section 1168 (indeterminate sentencing law) for a crime comitted either before or after July 1, 1977 but not sentenced to life imprisonment, must be paroled at the

(3)

<u>Expiration</u> of the term of <u>imprisonment</u>. The max <u>parole term for such persons is Three Years</u>, except that for a person sentenced for certain Sex Offenses, the maximum parole period is (5) five years. However, the "Parole Authority" may, for good cause, waive parole and discharge the inmate from custody at the time set for parole.

\* <u>However, In no case, except as provided in Section 3064</u> may a prisoner subjected to (3) three years on parole be retained under parole supervision or in custody for a period longer than (4) Four years from the date on his/her initial parole. ??? This section 3064 violates equal protection because it differed significantly from other commitments schemes and sentencing procedures & sentencing laws; that are retro active applications of former versions of statues also violate expost-facto laws, "MDO" law may be applied to paroled prisoners, when urgency legislation passed to cure constitutional deffects in the law.

<u>Prince</u> v. <u>Massachusetts</u>, 321 U.S. 158, 166 (1944), [our] decisions have respected the private realm of family life which the state cannot enter. (An oppinion of the U.S. Supreme Court.)

P.C. § 2932(g); See <u>Inre Ballard</u> (1981) 115 Cal. App. 3d 647, 650, 171, Cal. Rptr 459 (When misapplication of presentence conduct credits delay parole release date, credits must be used to reduce parole period.)

<u>Morrisey</u> v. <u>Brewer</u> (1972) 408 U.S. 471, 477, 92 S. Ct. 2593, 33 L. Ed. 2d 484; <u>People</u> v. <u>Denne</u> (1956) 141 Cal. App. 2d 499, 507, 508, 297 P.2d 451; P.C. §§ 3000, 3074 P.C. § 3053(a) <u>Robert</u> v. <u>Duffy</u> (1914) 167, Cal. 629, 634, 140, P. 260.

(4)

P.C. §§ 3000(a)(6), 5077, Board of Pardon v. Allen (1987) 482 U.S. 369, 374,-380, 107 S. Ct. 2415, 96 L.Ed. 2d. 303; P.C. § 3053.4 Young v. Harper (1997) 520 U.S. 143, 177 S.Ct. 1148, 137 L. Ed. 2d. 270 < inmate released under states "pre parole" program similar to liberty in parole and is entitled to procedural protection of Morrisey v. Brewer, P.C. §§ 422.55, 422.6, 422.7, 422.75, 594.3, 11411, P.C. § 3053.6(a) < in determinating whether to make order, parole authority must consider facts of offense and background of parole. P.C. §§ 2962, 2966(c) 2970, 2972(c)(c), 2980; see also stats. 1989, ch. 228, § 8 < act, adding requirement of proof of dangerousness and changing applicability of act to those persons committing crimes on or after Jan. 1, 1986 in light of People v. Gibson, is urgency statute necessary to keep treatment program in effect for those persons who committed their crimes on or after Jan 1, 1986); People v. Robinson (1998) 63 Cal. App. 4th 384, 74 Cal. Rptr. 2d 52 < MDO law is a civil scheme, and its imposition to prisoners whose offenses were admitted before July 1989 does not violate ex-post facto laws; supporting Myers conclusion in light of subsequent decision in; Kansas v. Hendricks (1997) 521 U.S. 346, 117 S.Ct 207, 138 L.Ed. 2d 501); People v. Superior Court (Myers) (1996) 50 Cal. App. 4th 826, 58 Cal. Rptr. 2d 3d < MDO law maybe applied to paroled prisoners whose predicate crimes were committed before July 27, 1989, when urgency legislation was passed and became effective to cure constitutional defects

in law found in Gibson; urgency legislation added in needed proof of present dangerousness requirements; further, Gibson was decided under former ex post facto law that has since changed in interpretation, and under new interpretation, MDO law is not subject to ex-post facto analysis); People v. Gibson (1988) 204 Cal. App.3d 1425, 1430, 143-1441, 252 Rptr. 460 (former versions of P.C. §§ 2962-2980 violated equal protection, because they differed significantly from other commitment schemes by mandating commitment without proof of present dangerousness; retroactive application of former versions of statutes also violated expost facto) P.C. § 3041.5(b)(2); Inre Strum (1974) 11 Cal.3d. 258, 272-273, 113 Cal. Rptr. 361, 521 P.2d. 97 (due process violated when denials of parole were discussed in post hearing interviews with counselor, but prisoner did not learn real reason for denial until he retained counsel) P.C. § 1168, 1170, 1170.2, 3000(b)(1) (2); Inre Chabliss (1981) 119 Cal. App.3d 199, 201-203, 173 Cal. Rptr. 712 (prisoner was not entitled to release without parole simply because court failed to advise him of possibility of parole at sentencing); Inre Bray (1979) 97 Cal. App.3d 504, 513-514, 158 Cal. Rptr. 745 (retroactive application of Penal Code § 3000 to parolee, increasing term, violates prohibition on expost facto laws) 667.5(c) (3),(4),(5),(6),(16),(18); §3000(b)(1) P.C. § 667.5(c)(3),(4),(5),(6), (16),(18), P.C. § 3000(b)(1),(2).

[104.02] Parole Administration; the parole authority grants, suspends, and revokes parole for state prisoners. [1] Parole Authority; for the purposes of Penal Code

(6)

Section 3000 et seq.) The Board of Prison/parole Hearings (Formally the Board of Prison Terms) is considered the Parole Authority. The parole authority reviews a prisoners request for reconsideration of denial of goodtime credit, the setting of the length of conditions of parole and the suspension or revocation of parole. Not pre-emptive DAPO Agent; post BPH Hearing; pre-revocation Extension!

# POINTS OF AUTHORITY

1. Due process clause of the 14TH Amendment of the U.S. Constitution applies to Federal & State Parole revocation hearings. In re Fleury (1967) 67 Cal.2d 600 [63 Cal. Rptr. 298]
In re Williams M. (1970) 3 Cal.3d 16 [89 Cal. Rptr. 33]
In re Bye (1974) 12 Cal.3d 96 [115 Cal. Rptr. 382].
In re Silverstien (1942) 52 Cal.App.2d 725, 728, 729, 126, P.2d 962 (When federal authorities did not object to state agents retaking parolee, parolee could not complain; grant of habeas corpus reversed. Even when the parolee is on both Federal & State parole, the state retains the power to revoke state parole, retake the parolee and imprison him/her. This power is subject only to Federal Rights, if asserted, under the principle of comity between jurisdictions.

Fifth Amendment; Due process requires that the probationer or parolee be accorded certain guarantees including the right to a hearing. The probationer or parolee "must" have an informal fact finding hearing, in the nature of a preliminary hearing to determine whether the conditions of probation or parole have in fact, been violated. Health & Safety Code §§ 11561, 11563

## CONCLUSION

Unfortunately we don't have the personal option to place sentimental consideration of the fate of these few agents, who knew full well what the concluding risk of their actions could procure. Though they may claim their actions & efforts were in good faith. The scales of justice have taken on a significant unbalancing shift of weight. Due to their acts of provisional injustice... Ignorance to the law is no EXCUSE! These individual agents representing the Federal & State Parole Dept. therefore must be subordinate to the greater good, securing justice of the free world & free land; The laws, Ethics Procedures, guidlines, Functions & operations governing that duty by which they were foresworn By Oath to ultimately uphold; by that great seal of the STATE OF CALIFORNIA.

